Filed 12/13/22 In re Contreras CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re | F078975 |
| RUBEN CONTRERAS | (Super. Ct. VHC376176) |
| On Habeas Corpus. | |

## THE COURT[*]

APPEAL from the judgment of the Superior Court of Tulare County. Nathan D. Ide, Judge.

Rebecca P. Jones, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra and Rob Bonta, Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Detjen, J. and Peña, J.

# INTRODUCTION

Petitioner Ruben Contreras petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187). The superior court denied the petition at the prima facie stage, without appointing counsel, on the grounds that petitioner was a major participant in the underlying felony who acted with reckless indifference to human life and, additionally, this court previously determined the trial evidence supported a finding that petitioner intended to kill the victim.

On appeal, petitioner argues the superior court erred in failing to appoint counsel and permit adequate briefing, in basing its ruling on the appellate opinion, and ultimately

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 recently was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

Petitioner filed his resentencing petition on a form petition for writ of habeas corpus, but made clear he was seeking relief pursuant to the procedure outlined in section 1172.6. The court addressed the resentencing petition pursuant to section 1172.6, but continued to caption the petition as one for a writ of habeas corpus and denied it as such. In his notice of appeal, petitioner stated he was appealing from "Denial of Petition to Vacate Conviction & Sentence (Cal.PC § 1170.95)."

In a noncapital case, a habeas petitioner cannot appeal from an order denying relief, but rather must file a new petition in a higher court. (§ 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on another ground in *In re Alva* (2004) 33 Cal.4th 254, 264; *In re Hochberg* (1970) 2 Cal.3d 870, 875, disapproved on another ground in *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 3; cf. § 1509.1; *Briggs v. Brown* (2017) 3 Cal.5th 808, 825.) However, an order granting or denying relief pursuant to section 1172.6 is appealable, pursuant to section 1237, subdivision (b), as an order after judgment affecting a party's substantial rights. (See *People v. Heard* (2022) 83 Cal.App.5th 608, 622, fn. 12.)

Regardless of how the matter is titled, petitioner's claims are reviewable by us on the merits. The People do not contend otherwise and have elected to brief the matter as though it were an appeal from the denial of a petition brought under section 1172.6. However, because the instant appeal is from an order styled as an order denying a petition for writ of habeas corpus, we maintain the single title format applicable to habeas corpus proceedings. (Cal. Style Manual (4th ed. 2000) § 6:32.)

in denying the petition at the prima facie stage. He contends the jury's true finding on a robbery-murder special circumstance, which required the jury to find he was a major participant in the underlying felony and acted with reckless indifference to human life (§ 190.2, subds. (a)(17), (d)), does not preclude relief because it was made prior to our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). He further contends this court's determination that the evidence supported a finding he had the intent to kill is not dispositive of his petition.

In our original opinion we held the jury's special circumstance findings rendered petitioner ineligible for resentencing as a matter of law. Accordingly, we held any error in failing to appoint counsel or otherwise follow the procedures set out in former section 1170.95, subdivision (c) was harmless. We therefore affirmed the superior court's denial of the petition. (*In re Contreras* (June 16, 2021, F078975) [nonpub. opn.].)

Petitioner petitioned the California Supreme Court for review (S270036). The state high court granted review and ultimately transferred the matter to us with directions to vacate our opinion and reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Pursuant to the California Supreme Court's order, we vacated our prior opinion. We also advised the parties of our intention to reverse and remand this matter with directions to issue an order to show cause, in light of the holding in *Strong*. The People filed a letter stating they had no objections to the proposed disposition. Petitioner filed no objections and the time for doing so has passed.

In light of *Strong*, we will reverse the superior court's order denying the petitions and remand with directions for the court to appoint counsel to represent petitioner and to issue an order to show cause.

## FACTUAL AND PROCEDURAL HISTORY

"After a jury trial, [petitioner] was convicted of first degree murder (Pen. Code, []§ 187, subd. (a)), residential robbery (§ 211), and residential

3.

burglary (§ 459). The jury found true the special circumstance allegations that the murder was committed during the commission of a burglary and robbery (§ 190.2, subd. (a)(17)), but found not true the personal arming allegation (§ 12022, subd. (b)(1)). The trial court sentenced [petitioner] to a six-year term on the residential robbery conviction and a consecutive indeterminate term of life without the possibility of parole on the murder conviction. A four-year term on the residential burglary conviction was imposed and stayed, as was a $2,000 restitution fine imposed pursuant to section 1202.45." (*People v. Contreras* (Apr. 21, 2006, F047366) [nonpub. opn.] fn. omitted (*Contreras*).)[2]

## A. Factual Background

In petitioner's direct appeal, we summarized the evidence leading to these convictions as follows:

"On June 17, 2001, [petitioner], Carlos E., Jesse L., and Elena Rodriguez went to visit Kelly Hiser and April Crone at the Lindsay Motor Lodge, where they lived. Rodriguez testified that, while the group drank beer behind Hiser's carport, Michael Loveland, a mentally challenged man who also lived at the motel, was collecting cans and bottles nearby from the motel trash bins. Rodriguez bought cigarettes from Loveland, who mentioned that he had marijuana.

"Rodriguez testified that, when Loveland left the carport, [petitioner] said to the group, 'Well, let's fuck him up. Let's fuck him up.' Rodriguez described the statement as having been made in a joking manner. Crone left soon after. About one half hour later, [petitioner] and Carlos left to use the restroom, leaving Rodriguez and Jesse in the carport. Jesse remained for several minutes and left. Rodriguez walked to the front of the motel and talked with Hiser.

"Rodriguez then decided to leave the motel because Carlos, her boyfriend, had left her in the carport. As she walked away, she came across [petitioner], Carlos, and Jesse near some train tracks behind the motel. [Petitioner] was carrying his shirt, and, at trial, Rodriguez described him as 'kind of quiet' and '[k]ind of nervous.' [Petitioner] told the group,

_____

[2] We take judicial notice of our prior opinion in petitioner's direct appeal, which was relied on by the trial court and is discussed at length by the parties. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).) However, our holding does not rely on the facts summarized in our prior opinion. (See § 1172.6, subd. (d)(3).)

'Whatever happens, whoever goes down goes down alone.' Rodriguez and Carlos then parted company with [petitioner] and Jesse.

"The following day, June 18, [petitioner] went again to the motel to visit Hiser and Crone. Crone testified that she overheard [petitioner] tell Hiser there was 'something wrong' with Loveland and that Loveland would not be coming out of his room. [Petitioner] told Hiser that he had 'cleaned up the whole mess and not to say anything' to the police about his presence at the motel. Hiser testified that [petitioner] told her he thought there was something wrong with 'the man in room 14,' and offered her $50 to keep quiet about his presence at the motel. [Petitioner] then pointed his finger at her as if he were 'firing a gun' at her.

"On June 19, [petitioner] returned to the motel to visit another friend, Phillip Hernandez. [Petitioner] asked Hernandez if he had seen Loveland around the motel. When Hernandez asked [petitioner] why he was asking, [petitioner] stated, 'Oh, no reason.' [Petitioner] then told Hernandez that Loveland had been stabbed and that [petitioner] believed Loveland was dead, adding, 'I'm in a whole lot of trouble.'

"On June 20, Loveland's mother found his body in his motel room. His VCR, telephone, and jewelry were missing from the room.

"Officers responding to the scene found a large amount of apparent blood spatter around the room. A hammer head was found on the corner of the bed; the hammer handle was located between the dresser and the bed. Shoe tracks were discovered on the stove top under the kitchen window, which led to the back of the motel. Carlos's fingerprints were found on a beer bottle in the room.

"Loveland's body was severely beaten. He suffered three blows to the back of his head and was stabbed four times in the torso. An autopsy determined that he died from severe blunt force trauma to his head.

"Sergeant Kevin Cotton interviewed [petitioner] about Loveland's homicide on the same day the body was discovered. [Petitioner] gave Sergeant Cotton two separate statements. In the first, [petitioner] alleged he met up with 'Jose' and 'Tony' at the motel on June 17, but knew nothing about the murder.

"In his second statement, [petitioner] changed his story and stated he had been at the motel with Carlos, Jesse, and Rodriguez on the night of the murder, drinking beer. [Petitioner] admitted getting some cigarettes from Loveland, who had told the group he had marijuana in his room.

5.

[Petitioner] told Sergeant Cotton that, when Loveland left, he and Carlos discussed robbing Loveland for his money and drugs by going into his room to 'knock him out and take his stuff.' According to [petitioner], once in Loveland's room, Loveland offered him marijuana and, as he reached for the pipe, Carlos hit Loveland on the top of the head with a hammer. The hammer broke on impact, at which point Carlos got a baseball bat and proceeded to hit Loveland another five or six times. [Petitioner] watched as Carlos beat Loveland. After Carlos beat Loveland, Jesse walked into the room. Jesse then hit Loveland several times in the torso area where Loveland's stab wounds were found.

"[Petitioner], Carlos, and Jesse then ransacked Loveland's motel room and took the bat, VCR, and marijuana bong. They secured the front door with the security chain and climbed out the kitchen window to the back of the motel. [Petitioner] told Sergeant Cotton he felt Loveland's neck for a pulse, but was unable to locate one.

"[Petitioner] admitted to Sergeant Cotton that he had offered Hiser $50 to '[k]eep her mouth shut,' stating he was motivated by 'greed' because he wanted Loveland's marijuana. [Petitioner] also admitted speaking to Hernandez and telling him of the assault.

**"Defense**

"At trial, [petitioner's] defense was that he did not actually agree to rob Loveland, and was thus not guilty of the felonies underlying the felony murder charge. Instead, [petitioner] testified that he believed Carlos was joking when he asked him if he wanted to rob Loveland for his marijuana, and he jokingly agreed. One half hour later, the two went to Loveland's motel room to use the restroom. Before entering, Carlos again asked him if he wanted to rob Loveland. When [petitioner] declined, Carlos grabbed him by the shirt collar and told him, ' "You're going to help me take his shit or I'm going to fuck you up." ' Carlos 'more or less' pushed [petitioner] through the front door of Loveland's room.

"[Petitioner] testified that, once in the room, he used the restroom. When he came out, [petitioner] smoked the pipe offered him by Loveland. While [petitioner] was smoking, Carlos got up from his chair and hit Loveland on the top of the head with a hammer. The hammer broke, so Carlos got a baseball bat and continued to hit Loveland about five times on the head. [Petitioner] was 'shocked' and 'stunned,' but did not do anything during the attack. Afterwards, Carlos ransacked Loveland's room and took some of his belongings.

6.

"Jesse then walked into the motel room and punched Loveland several times in the torso. [Petitioner] did not say anything while Jesse punched Loveland. [Petitioner] tried to find a pulse on Loveland's neck, but couldn't. The three climbed out the kitchen window. Carlos was carrying a bat and either Jesse or Carlos had Loveland's VCR.

"[Petitioner] testified that he did not call the police because he did not want to be labeled a 'rat.' [Petitioner] denied taking any of Loveland's property. He acknowledged lying to Sergeant Cotton when he was first questioned because he did not 'want to be a rat at first.' [Petitioner] testified that he did not know Carlos was going to beat Loveland with the hammer and bat, and he hoped Carlos was not actually going to rob Loveland.

"On cross-examination, [petitioner] acknowledged that he told investigating officers a number of times that he went into Loveland's motel room with the intent to rob him, but claimed to have said this 'so they wouldn't think [he] was lying.' [Petitioner] did not tell Sergeant Cotton that Carlos had threatened him before they went into Loveland's room, claiming he did not want to get into 'more trouble.' He acknowledged telling Sergeant Cotton that he had ransacked Loveland's room but, at trial, testified that he did not actually do so. He also agreed with Sergeant Cotton's suggestion that he had been looking for 'weed or money' in Loveland's room. At trial, [petitioner] responded that he had agreed because '[t]hat's what you look for in a robbery.'

"Dr. Madeline Daniels, a forensic psychologist, interviewed [petitioner] in jail and conducted numerous tests on him. She determined that [petitioner] was learning impaired, he had attention deficit hyperactivity disorder, and he had a dependent personality disorder. He also suffered from an anxiety disorder, methamphetamine abuse, and possible posttraumatic stress disorder. Dr. Daniels testified that [petitioner's] involvement in the crimes was consistent with his personality disorder, but she could not discern whether his involvement was because he was afraid of Carlos or because he did not want to appear weak to his friends.

"On cross-examination, Dr. Daniels acknowledged that [petitioner] had no indications of obsession, compulsion, phobias, delusions or hallucinations, and his IQ was in the average range." (*Contreras*, *supra*, F047366.)

**B.** **Direct Appeal**

In his direct appeal, petitioner argued the court erred in failing to give a duress instruction (CALJIC No. 4.40), failing to give an introductory instruction regarding the special circumstance (CALJIC No. 8.80.1), declining to stay the sentence on his robbery conviction (§ 654), and imposing a parole revocation fine (§ 1202.45). (*Contreras*, *supra*, F047366.) This court agreed the parole revocation fine was inapplicable and ordered the abstract of judgment amended to remove the fine, but otherwise affirmed. (*Ibid*.)

Relevant here, this court concluded petitioner was not prejudiced by the court's failure to give CALJIC No. 8.80.1, "which defines (1) the mental state required for a felony-murder special circumstance when the defendant is not the actual killer; (2) the prosecution's burden of proof as to the special circumstance; and (3) the requirement that the jury agree unanimously as to whether the special circumstance is true or untrue." (*Contreras*, *supra*, F047366.) We stated as follows: "Because it can be inferred from the jury's finding on the personal use allegation that the jury believed [petitioner] was not the actual killer, we next look to see if the evidence demonstrates that [petitioner] had either (1) an 'intent to kill' or (2) aided and abetted the robbery as a 'major participant' and acted with 'reckless indifference to human life,' as required under the special circumstance finding. (§ 190.2, subds. (c), (d).)" (*Ibid*.) We then stated, "[W]e find that no reasonable jury, properly instructed, would have failed to find [petitioner] acted with reckless indifference to human life and was a major participant in the robbery." (*Ibid*.) After summarizing the evidence relevant to that conclusion, we explained, "[Petitioner's] statements to Sergeant Cotton and his own testimony at trial show that, even if he was not the actual killer, and even if his intent to kill was not resolved under other properly given instructions, he was a major participant in the robbery and burglary and his actions demonstrated a reckless indifference to human life." (*Ibid*.)

8.

With regard to petitioner's claim that his sentence for robbery should have been stayed pursuant to section 654, this court stated, "[W]e disagree with [petitioner] that no substantial evidence sustains the court's implicit determination that he held more than one objective when he committed the crimes against Loveland. Rather, the evidence supports a finding of separate intents to both kill and rob Loveland." (*Contreras*, *supra*, F047366.) We further noted, "While the jury did not find [petitioner] personally used the bat, hammer or knife, the court was free to determine that [petitioner], as an aider and abettor, had the same intent to kill Loveland." (*Ibid*.)

## C.    Petition for Resentencing

On February 7, 2019, petitioner filed a petition for writ of habeas corpus, seeking resentencing pursuant to section 1172.6. In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder; he was convicted of first degree murder at trial; and he could not be convicted of first or second degree murder because of changes to section 188 or 189. He requested counsel be appointed to represent him.

On February 20, 2019, the court summarily denied the petition as follows:

"In order to be eligible for relief under [section 1172.6], Petitioner must satisfy all three preliminary conditions under [section 1172.6, subdivision (a)]. The third condition, [section 1172.6, subdivision (a)(3)], requires that the petitioner could not be convicted of first or second degree murder because of changes to Section 188, or 189. Petitioner does not satisfy this third requirement, because he could have been convicted under revised [section] 189(e)(3). That section states, for the felonies listed in [section] 189(a) (first degree eligible crimes), Petitioner would be liable for murder if the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2. In the present case, not only could Petitioner have been convicted under [section] 189(e)(3) based upon the facts of this case, the Fifth District Court of Appeal has already affirmatively found Petitioner was a major participant in the underlying crime, and acted with reckless indifference to human life. As stated by the Court of Appeal, 'Because it can be inferred from the jury's finding on the personal use allegation that

9.

the jury believed [petitioner] was not the actual killer, we next look to see if the evidence demonstrates that [petitioner] had either (1) an "intent to kill" or (2) aided and abetted the robbery as a "major participant" and acted with "reckless indifference to human life," as required under the special circumstances finding.' [Citation.]

"In addressing these two issue[s], the Fifth District Court of Appeal stated, 'Similarly here, we find that no reasonable jury, proper[l]y instructed, would have failed to find [petitioner] acted with reckless indifference to human life and was a major participant in the robbery.' [Citation.] '[Petitioner]'s statements to Sergeant Cotton and his own testimony at trial show that, . . . he was a major participant in the robbery and burglary and his actions demonstrated a reckless indifference to human life. In sum, we find the instructional error harmless in this case.' [Citation.]

"As to the intent to kill factor, the Fifth District has already found that Petition[er] had the requisite intent to kill under the murder statutes. 'Rather, the evidence supports a finding of separate intents to both kill and rob Loveland.' [Citation.]

"Because the Fifth District Court of Appeal has already made findings in Petitioner's case, Petitioner is not eligible for relief because Petitioner harbored the intent to kill by aiding and abetting the actual killer in the commission of the murder, and was a major participant in the underlying felony who acted with reckless indifference to human life. Petitioner has failed to make a prima facie showing that he is entitled to relief.

"Petitioner's Writ of Habeas Corpus is therefore denied as a matter of law."

This timely appeal followed.

## DISCUSSION

### I.    Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018,

10.

ch. 1015, § 1, subd. (f); see § 189, subd. (e); accord, *Strong*, *supra*, 13 Cal.5th at pp. 707-708.) Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of felony murder to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a); accord, *Strong*, at p. 708.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)-(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.) If the sentencing court determines the petitioner has made such a showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).) At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*People v. Lewis* (2021) 11 Cal.5th 952, 972-974 (*Lewis*); see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.   Appointment of Counsel

Petitioner contends the trial court erred by summarily denying his facially sufficient petition without appointing counsel and permitting further briefing.

At the time the trial court ruled on the petition, our Supreme Court had not resolved whether section 1172.6 requires the appointment of counsel or further briefing immediately upon the filing of a facially sufficient petition. (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-967.) However, our Supreme Court and Legislature have since

clarified that counsel must be appointed if requested, and briefing must proceed, so long as the petition complies with the requirements of section 1172.6, subdivision (b)(1) and (2). (§ 1172.6, subd. (b)(3); accord, *Lewis*, at pp. 962-963, 967.) Here, the People do not suggest the petition failed to meet the requirements of section 1172.6, subdivision (b). Accordingly, appointment of counsel and a full opportunity for briefing were required by section 1172.6, subdivisions (b)(3) and (c).[3] (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) The court erred in disposing of the petition without following these procedures.

### III. Prejudice

Because the trial court erred in failing to appoint counsel or permit further briefing, we may affirm only if petitioner was not prejudiced by the error. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.) Because the record does not establish petitioner is ineligible for resentencing as a matter of law, we cannot conclude the court's error in failing to appoint counsel was harmless.

While this appeal was pending, our Supreme Court issued its opinion in *Strong*, *supra*, 13 Cal.5th 698. Therein, the high court held that a special circumstance finding entered pursuant to section 190.2, subdivision (a)(17) prior to the court's decisions in *Clark*, *supra*, 63 Cal.4th 522 and *Banks*, *supra*, 61 Cal.4th 788 did not preclude a section 1172.6 petitioner from making a prima facie showing of eligibility for relief.[4] (*Strong*, at p. 703.) In light of *Strong*, the special circumstance findings in the instant case are not preclusive on prima facie review of the petition under section 1172.6. (*Strong*, at p. 703.)

---

[3] We reject petitioner's argument that the denial of counsel violated his constitutional rights. Our Supreme Court has determined the failure to appoint counsel in a section 1172.6 proceeding is error under state statutory law only. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-973.)

[4] *Banks* and *Clark* "substantially clarified the law" regarding "what it means to be a major participant and . . . to act with reckless indifference to human life." (*Strong*, *supra*, 13 Cal.5th at pp. 706-707.)

The People have also argued our opinion in petitioner's direct appeal establishes petitioner is ineligible for relief. Specifically, the People contend our discussion of the evidence in support of the special circumstance finding establishes petitioner was a major participant who acted with reckless indifference to human life. The People also rely on our prior determination that substantial evidence supported a finding defendant acted with intent to kill as support for a determination that petitioner acted with reckless indifference to human life. However, a petition may not be denied simply because substantial evidence supports a conclusion the petitioner was convicted under a valid theory. (See § 1172.6, subd. (d)(3); *Lewis*, *supra*, 11 Cal.5th at p. 966 [prima facie determination is a question of law].) Accordingly, our prior discussion of this evidence does not establish petitioner is ineligible for resentencing as a matter of law.

In sum, the petition was facially sufficient and alleged the essential facts necessary for relief under section 1172.6. Because the People have presented no other basis to deny the petition at the prima facie stage, the order denying the petition must be reversed and the matter remanded with directions to appoint counsel, issue an order to show cause and, to the extent necessary, conduct an evidentiary hearing under subdivision (d) of section 1172.6. We express no opinion on the ultimate resolution of the petition.

## DISPOSITION

The February 20, 2019 order denying the petition is reversed and the matter remanded with directions to appoint counsel, issue an order to show cause and, to the extent necessary, hold an evidentiary hearing pursuant to section 1172.6, subdivision (d).

13.